On September 15, 1975, the planning and zoning commission of the town of Guilford (hereinafter referred to as the commission), acting under the provisions of § 8-23 of the General Statutes, adopted an amendment[1] to its comprehensive plan of development, effective September 30, 1975. The plaintiffs allege that they are aggrieved by the open space amendment for the reasons that (1) section 12-107e of the General Statutes is vague and therefore violative of the state and federal constitutions; (2) the open space amendment violates *Page 54 
the equal protection clause "in that it confers a benefit on some to the detriment of other property owners ... without legislative reason"; (3) the amendment constitutes spot zoning; (4) the commission exceeded its authority in passing the amendment because it is not "within the letter and/or spirit of ... [ § 12-107e] ..."; "(5) the amendment as applied will effect a taking of property without just compensation ...; (6) ... the amendment will prevent land from being properly developed and will relieve some property owners from a tax burden which is justifiably theirs at the expense of other taxpayers; (7) ... the amendment gives the [c]ommission de facto power to assess taxes and therefore constitutes a usurpation of the taxing power; and (8) [t]he amendment further curtails the equal protection clause of the federal constitution in that it arbitrarily provides greater benefits to those who have owned property for a longer period of time than others." The complaint further alleges that the "[c]ommission acted illegally, arbitrarily and in abuse of the discretion vested in it." In their prayer for relief, the plaintiffs ask this court to declare the amendment null and void.
The court deems it unnecessary to discuss paragraph three (spot zoning), paragraph six (proper development of land) and paragraph seven (de facto power to assess taxes) for the reason that the plaintiffs' brief does not address itself to those issues.
Connecticut was neither the first nor the only state to pass open space laws which provide tax relief to certain qualified property owners. Note, "Preferential Property Tax Treatment of Farmland and Open Space under Michigan Law," 8 U. Mich. J.L. Ref. 428, 429 n. 6 (hereinafter referred to as Note, J.L. Ref.); Hagman, "Open Space Planning and Property Taxation — Some Suggestions," *Page 55 
1964 Wis. L.R. 628, 636 n. 30 (hereinafter referred to as Hagman). "The premise for all open-space legislation is that much undeveloped land in and around an expanding metropolis is an increasingly valuable asset. Open areas should be preserved for a variety of purposes, economic and otherwise — some only vaguely articulated thus far: to `shape' or `time' urban growth and thus prevent development from spreading at all, or too fast, into areas where it will produce high public cost for community services or hasty, ill-planned sprawl today which will be blight tomorrow; to preserve nature and natural amenities; to relieve urban congestion and create more cohesive suburban communities; to reserve large accessible areas for outdoor recreation and neighborhood playgrounds and parks; to preserve sites of historic or scientific importance; to conserve wildlife habitats, water supply areas, valuable forests, and agricultural land; to minimize water runoff, soil erosion, and flood damage in critical areas; to protect health against the hazards of inadequate waste disposal; and to reserve adequate land for the development of facilities, public or private, that careful estimates suggest will be needed in the future." Krasnowiecki Paul, "The Preservation of Open Space in Metropolitan Areas," 110 U. Pa. L. Rev. 179, 180-81.[2]
"Open land taxation motivated by the land use *Page 56 
planning desideratum maintaining open space and preventing sprawl has a relatively recent discoverable history. There are no antecedents in England, where assessment is based on the income produced and not on market value. Under such circumstances, land which is not intensively used produces little income and hence is not highly taxed.... Suggestions for open land taxation schemes having a resemblance to current open land taxation statutes date back to 1926 in the United States. The resemblance is due to a similarity in motivation, namely, the achievement of land use planning goals." Hagman, op. cit., 634.
Basically, General Statutes §§ 12-107a, 12-107e
and 12-504a allow a preferential assessment, that is, they permit an assessor to disregard the market value of the land and compute the tax on its use value. Those statutes also "provide for deferred taxation by charging a lower-than-normal rate while land is used in an approved manner and recapturing all or part of the reduction when the land is converted to another use." Note, J.L. Ref. 431; see also §§ 12-504a, 12-504b and 12-504e. The theory underlying those enactments is that lower taxes will prevent the sale and conversion of the land to more intensive use. Note, J.L. Ref. 429.
The plaintiffs and the citizens of the town of Guilford are obviously divided on the issue of their open space amendment and the tax preference it entails. "[T]axation is an intensely practical matter."State Tax Commission v. Gales, 222 Md. 543,560. But to paraphrase Holmes, J., the task of the law is the drawing of lines. In so doing, it is possible to commit errors of judgment in the accommodation of principle, but perhaps this is the best that the law can afford. Schlesinger v. Wisconsin,270 U.S. 230, 241 (dissenting opinion). As one commentator put it, "[a] preferential tax raises a controversial *Page 57 
political issue, as any tax favoritism would. However, it is not unreasonable for the general body politic to support preferential taxation of open land. Support would be reasonable where land use is controlled and the community is serious and careful about planning, so that the landowner cannot remove the restriction virtually at his discretion. True, the speculative value of the land may still be realized, but it also may not be, and the public, not the landowner, determines when. Furthermore, preferential taxation for open land does not seem grossly unfair when the benefit theory of taxation is applied. Clearly, open land places a comparatively light burden on schools, police and fire departments, and the many other governmental facilities conventionally supported by the property tax. If the public, in its need for open space and its need to control sprawl, seriously restricts the right to convert the land to a higher use, it seems only fair that the public should pay by way of a tax preference for that it has gained." Hagman, op. cit., 639-40.
The plaintiffs ask the court to declare § 12-504a
unconstitutional as violative of the equal protection clause of the fourteenth amendment of the United States constitution. They argue that the ten-year decrease in the conveyance tax bears no rational relationship to the legislative goal of § 12-107a, and that the ten-year decrease discriminates, without reason, on the length of the ownership of the land. The plaintiffs also make an equal protection argument against Guilford's open space amendment and ask that § 12-107e be struck down.
It has been suggested that there is no federal constitutional basis for a challenge to the Connecticut preferential assessment scheme. The equal protection clause of the fourteenth amendment merely requires that taxation of property not be *Page 58 
patently arbitrary and that rates be uniform within classes. Hagman, op. cit., 641 n. 43; see Newhouse, Constitutional Uniformity and Equality in State Taxation, pp. 603, 605-606.
State constitutional provisions, however, must also be examined with respect to tax assessment schemes. In other states, state constitutional requirements of uniformity and equality in taxation have constituted a factor in deciding whether any type of open land taxation scheme might be adopted. Hagman, op. cit., 640-41. First, when the state constitution requires property assessments to be based on "just," "full," "market," or "true" valuation, then tax statutes based on "use" value are open to constitutional challenge. Hagman, op. cit., 641. The Connecticut constitution does not seem to require "just valuation"; consequently, that ground of challenge would not seem to be available in Connecticut. Second, some state constitutions require uniformity in taxation. Such a provision would prohibit unreasonable classifications and partial exemptions. Hagman, op. cit., 641. It does not appear that the Connecticut constitution contains such a provision. Moreover, reasonable classifications and exemptions appear to be approved inBassett v. Rose, 141 Conn. 129.
The Connecticut Supreme Court has never ruled on the constitutionality of § 12-504a of the General Statutes. Nor has it ever ruled on the constitutionality of the other real estate taxes set forth in chapter 223 of the General Statutes. See, e.g.,McKinney v. Coventry, 32 Conn. Sup. 82 (constitutionality of § 12-504a raised, but not decided);Alling Paper Co. v. Massinin, 31 Conn. Sup. 154
(conveyance tax of § 12-494 mentioned without disapproval). For the plaintiffs to prevail on this appeal, it must be shown that the conveyance tax bears no rational relation to the legislative intent. *Page 59 
It is not relevant whether the tax statute is wise;State ex rel. Kirby v. Board of Fire Commissioners,129 Conn. 419; it must only be rational. Experts are divided as to the relative merits or wisdom of this type of legislation. See Marsele Calabrese, "Taxation of Open Spaces: Its Pros and Cons," 18 Conn. Government 1; Hagman, op. cit., 429.
It is questionable whether the plaintiffs have made a showing that the tax is not rationally related to the legislative intent. First, it must be conceded that the state has taxing powers. First FederalSavings Loan Assn. v. Connelly, 142 Conn. 483. Second, any conveyance tax, no matter how insignificant or variable over time, might serve to deter some persons from conveying their land, thus keeping the land as open space. Third, the variation in tax depending on the length of time the land is held is not so clearly irrational that it should be struck down. A high tax imposed on a conveyance for all time, for example, might unduly impede the marketability of the land. Also, the laws in this country are replete with examples of variations in tax rates depending on length of ownership, e.g., the federal tax laws relating to short and long term capital gains. Guinn v. United States, 238 U.S. 347, relied on by the plaintiffs, is inapposite. That case involved the denial of the right of vote to blacks in violation of the fifteenth amendment to the United States constitution. In any event, voting is a fundamental right which may not be abridged without a compelling state interest — a much higher constitutional standard than the applied to the taxing powers. An analogous argument was presented to the courts with respect to a city ordinance which affected the city's grand list. In Bassett v. Rose,141 Conn. 129, the town of Milford taxed all property except new construction built between October 1, 1950, and June 30, 1952. Such a tax exemption *Page 60 
based on length of ownership was upheld. The Connecticut Supreme Court stated (pp. 133-34): "Legislatures have broad powers of taxation. They may prescribe the conditions, means and methods of the assessment, levy and collection of taxes.... They may classify taxpayers if there is a reasonable basis for the classification and all persons in any one class are treated uniformly.... The classification is permissible if it bears a reasonable relation to a legitimate purpose of governmental action.... The question under consideration here is whether the special act is discriminatory. It is not if it treats all persons who are in the same class on an equal basis and if there is a reasonable distinction between the members of that class and all others. The class of persons affected by the special act is made up of those who owned property in Milford on October 1, 1950. They are all treated alike. It is not unreasonable to segregate them from persons who owned property at some time prior to that date or from those who owned property at some subsequent date...." (Citations omitted.)
The plaintiffs here have vigorously argued that all similarly situated have not been treated alike. Here, however, all persons who have owned their land for the same amount of time are treated in the same way. Thus, by analogy to Bassett v. Rose,
supra, the provision in § 12-504a concerning length of ownership and the tax preference scheme in general cannot be considered unconstitutional as a violation of the fourteenth amendment to the United States constitution. Thus, the court concludes that the equal protection clause could not affect the statute in question.
The plaintiffs also argue that § 12-107e (a) be declared unconstitutionally void for vagueness on the ground that the statute offers no guidelines "which demonstrate how and in what manner the *Page 61 
planning commission's recommendations are to be arrived at." The court cannot agree with that contention. The "how and in what manner" is set forth in General Statutes §§ 8-23 and 12-107e. Section12-107e allows the commission to designate areas as open space land as part of its plan of development, and § 8-23 sets forth how such a plan is to be created, including provisions as to its content, publication, notice, hearings on the proposed amendment and final adoption. The guidelines as to what land may be designated as open land, i.e., how the commission's recommendations are to be arrived at, may be found in §§ 12-107a and 12-107b (c). Section12-107a sets forth the legislative purpose in passing the open space provision, and such purpose must rule and guide the commission's designation of any land as open space. Furthermore, § 12-107b (c) defines the term "open space." Obviously, for the commission to declare any land as open space, it must first make a finding that such land meets the statutory criteria. Thus, the statute fixes a limit on the commission's activities and thereby saves the statute from being void for vagueness.
Paragraph three (e) of the complaint alleges that "[t]he amendment, as applied, will effect a taking of property without just compensation in violation of the Federal Constitution." The Connecticut constitution, article first, § 11, provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." To constitute a "taking" within this constitutional provision, the owner must be excluded from his private use and possession, and an authority exercising a right of eminent domain must assume the use and possession of the land for a public purpose. Carl Roessler,Inc. v. Ives, 156 Conn. 131, 140. The court finds no taking in this case. The plaintiffs are not prevented *Page 62 
from using their land. Nor is there any evidence that the open space amendment has destroyed the value of their land. Therefore, it cannot be said that there has been a confiscatory taking by the municipality. Cf. State National Bank v. Planning Zoning Commission, 156 Conn. 99.
The plaintiffs also make the claim that the open space amendment adopted by the commission goes beyond the scope of authority and the intent of § 12-107e of the General Statutes. They argue that the commission went beyond the intent of the enabling statute when they designated "all land in the Town of Guilford" as open space, with certain exceptions. Whether the commission chooses to describe the proposed open space by designating each individual parcel or by creating boundaries is beside the point, so long as all of the land so designated as open space land is within the definition of § 12-107b (c).
It should be emphasized that the amendment does not confer a tax advantage on any lots located in subdivisions. That appears valid since "[i]f subdivision is allowed it is presumed that a planning decision to permit development has been made, and the tax advantage given to restrain development ceases to have any validity." Hagman, op. cit., 650.
The Connecticut Supreme Court has held that a court shall not substitute its judgment for that of the commission, so long as the regulation in question is in furtherance of a proper purpose. First HartfordRealty Corporation v. Plan Zoning Commission,165 Conn. 533; Teuscher v. Zoning Board ofAppeals, 154 Conn. 650, 659; Young v. Town Planning Zoning Commission, 151 Conn. 235; Zandri
v. Zoning Commission, 150 Conn. 646. For the legislation to be found unconstitutional, the plaintiffs bear the burden of establishing its unconstitutionality *Page 63 
beyond a reasonable doubt. Adams v. Rubinow,157 Conn. 150, 152-53; Hardware Mutual CasualtyCo. v. Premo, 153 Conn. 465, 470.
 The court concludes that in passing the open space amendment the commission did not act illegally, arbitrarily or in abuse of the discretion vested in it.
For the reasons stated herein, the plaintiffs' appeal must be and is hereby dismissed.