[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 7, 1990, the plaintiff, Whisper Wind Development Corporation, filed an application for a special permit for the excavation and removal of earth products from an approximately fifteen acre parcel on the west side of Whisper Wind Road in Middlefield, Connecticut.
The excavation and removal of earth products is a permitted activity governed by the special permit regulations set forth in Sec. 9.01, et seq., of the Middlefield Zoning Regulations.
The defendant, Middlefield Planning Zoning Commission (the "Commission"), held a public hearing on the plaintiff's application which commenced on January 23, 1991 and was closed on February 13, 1991. On April 10, 1991, the Commission denied the plaintiff's application. Notice of this decision was published on April 19, 1991.
The Commission denied the plaintiff's application for the following reasons:
 a) "The proposed use would not be harmonious with the existing development in the district and would be detrimental to the orderly development of adjacent properties."
 b) "The location, size, nature and intensity of the use would create a pedestrian and CT Page 4195 traffic hazard and would conflict with the traffic characteristics of the surrounding neighborhood"
The plaintiff alleges in its first count that it is aggrieved by the Commission's denial and that the Commission acted illegally, arbitrarily and in abuse of its discretion in that:
 a) The application complied with all of the requirements of Secs. 9.01 and 10.02 of the Middlefield Zoning Regulations;
 b) The reasons for denial are legally insufficient as a basis for denial of the plaintiff's application;
 c) The reasons for denial have no factual basis;
 d) The denial was motivated by prejudice and bias.
The complaint also contains a second and third count alleging that the plaintiff was denied equal protection of the law and due process of law under the Connecticut Constitution and the United States Constitution. The second and third counts were orally withdrawn by the plaintiff at the hearing before this court.
The Commission has admitted that the excavation of earth products is a permitted activity governed by the special permit regulations contained in Sec. 9.01, et seq., of the Middlefield Zoning Regulations and that the Commission held hearings, denied the application and published notice of the denial on the dates alleged by the plaintiff. The Commission has denied all other allegations in the complaint. At the hearing before this court, the Commission conceded that the plaintiff had met the technical requirements for obtaining a special permit for the excavation and removal of earth products contained in Sec. 9.01 of the Middlefield Zoning Regulations.
I. Aggrievement
General Statutes Sec. 8-8 (b) provides that "any person aggrieved by any decision of a [planning and zoning commission] may take an appeal to the superior court. . . ." General Statutes Sec. 8-8 (a)(1) provides that an aggrieved person, for purposes of General Statutes Sec. 8-8 (b), "includes CT Page 4196 any person owning land that abuts or is within a radius of one hundred feet of an portion of the land involved in the decision of the board."
At the hearing on this appeal, the plaintiff introduced the testimony of Rodney Pandolfo, the president of the plaintiff. He testified that the plaintiff was at all relevant times, and continues to be, the owner of the subject premises. The Commission introduced no contradictory evidence. The plaintiff is the owner of the subject premises and, accordingly, is aggrieved. Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968).
II. Timeliness
General Statutes Sec. 8-8 (b) requires that an appeal of a decision of a planning and zoning commission "shall be commenced by service of process [on the chairman or clerk of the planning and zoning commission and the clerk of the municipality] within fifteen days from the date that notice of the decision was published . . . ." See General Statutes Secs. 8-8 (a)(2), 8-8 (e) and 8-8 (f).
The notice of the Commission's denial was published on April 19, 1991. The sheriff's return indicates that Frank St. John, the Chairman of the Commission, and Evelyn Konefal, Town Clerk of the Town of Middlefield were served on May 3, 1991. The appeal is timely.
III. Scope of Review
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 57, 549 A.2d 1076
(1988), citing Spectrum of Connecticut, Inc. v. Planning 
Zoning Commission, 13 Conn. App. 159, 163-64, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). "The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it". Id., citing Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47, 50,484 A.2d 483 (1984).
 "Generally, it is the function of a zoning board or commission to decide `within prescribed limits and consistent with the exercise of its discretion, whether a particular section of the zoning regulations CT Page 4197 applies to a given situation and the manner in which it does apply. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its actions is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Connecticut Sand Stone Corporation v. Zoning Board of Appeals, 150 Conn. 439, 442, 190 A.2d 594 1963.'" Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).
Double I Limited Partnership v. Plan Zoning Commission,218 Conn. 65, 72, 588 A.2d 624 (1991) (citations omitted).
 "`Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons."' (Citations omitted.) Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980). Since the `credibility of witnesses and the determination of factual issues are matters within the province of the administrative agenc'y; Feinson v. Conservation Commission, 180 Conn. 421, 425, 429 A.2d 910 (1980); the court must determine the correctness of the conclusions from the record on which they are based. Housatonic Terminal Corporation v. Planning Zoning Board, supra, 306)." Torsiello v. Zoning Board of Appeals, supra, 49-50
 ". . . The decision of a zoning authority will only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, CT Page 4198 444, 418 A.2d 82 (1979)," Id., 50.
Spectrum of Connecticut, Inc. v. Planning Zoning Commission supra, 163-64.
IV. Legality of Denial of Special Permit Application Based on General Considerations Contained in Zoning Regulations
 A. A zoning authority may deny a special permit application based on general considerations contained in the local zoning regulations even where the plaintiff's application complies with the detailed technical requirements established in the regulations for the specific proposed use.
The plaintiff argues that its application for a special permit to conduct the excavation and removal of earth products met all the standards and relevant zoning regulations which the plaintiff must satisfy, namely, the detailed technical requirements contained in Sec. 90.1 of the Middlefield Zoning Regulations. The plaintiff further argues that the Commission's denial was illegal, arbitrary and an abuse of the General Considerations contained in Sec. 10.02.01 of the Middlefield Zoning Regulations. The plaintiff argues that the second sentence of Sec. 10.02.01, which provides that "[i]n authorizing the issuance of a special permit, the Commission shall take into consideration the public health, safety and welfare and shall prescribe appropriate conditions and safeguards to insure the accomplishment of the objectives enumerated in Sec. 10.02.91(1) through (3)," triggers the authority of the Commission to consider the enumerated objectives only when the Commission grants a special permit application and even then the Commission may consider the enumerated objectives only for the purpose of imposing conditions on an approved special permit application.
The Commission argues that the General Conditions contained in Sec. 10.02.01 of the Middlefield Zoning Regulations may serve as the basis for the denial of a special permit application despite the application's compliance with the detailed technical requirements contained in the regulations pertinent to the specific proposed use.
Cameo Park Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672, A.2d (1963), is dispositive of this issue. The plaintiff in Cameo sought to construct garden apartments on a 19.86 acre parcel of land located in an RS-3 district in Stratford. Id., 673, 675. Pursuant to CT Page 4199 Sec. 4.2 of the Stratford Zoning Regulations, only single family dwellings were allowed in RS-3 districts. Id., 673. Stratford Zoning Regulations Sec. 5.4.2 provided, however, that garden apartment developments "may be approved as special cases as provided in Section 20 of these regulations." Id., 673-74. The Cameo court determined that the "special case" procedure outlined by the Stratford Zoning Regulations was essentially equivalent to special permit and special exception procedures. Id., 678. The cameo court also noted that the Stratford Zoning Regulations also designated:
 The uses as "special cases," of which garden apartments is one, as "permitted uses in the districts under which they are named, subject to approval by the
 Town Planning and Zoning Commission as to each specific use" and state that "each of these uses is declared to be of such peculiar and unusual nature in its effect on an area that in order to have it comply with the purposes of the zoning regulations it is necessary to consider it as a special case."
 Stratford Zoning Regulations Sec. 20.2. The regulations require that applications for approval of all uses named as special cases shall be made to the town planning and zoning commission. Stratford Zoning Regulations Sec. 20.1. The function of the commission in passing on such an application is defined in Stratford Zoning Regulations Sec. 20.2.
Id., 674 (footnote omitted). Stratford Zoning Regulations Sec. provided that:
 The Commission may, after public notice and hearing in the same manner required by law for zoning amendments, and by the affirmative vote of four or more members present at the hearing, approve the use after making special application of these regulations in harmony with their general intent by stipulating such restrictions as appear to the Commission to be reasonable and the minimum necessary to protect property values in the district CT Page 4200 as a whole and the public health, safety and welfare. Before approving any special case the Commission shall consider (a) The size and intensity of such use and its effect on the comprehensive plan of development for the town. (b) The capacity of adjacent and feeder streets to handle peak traffic loads and hazards created by the use. (c) The emission of noise, light, smoke, odor, gas, dust or vibration in noxious or offensive quantities. (d) The overall effect on tax valuation of neighborhood properties due to unusual topography of the location, the nature, location and height of buildings, walls, stacks, fences, grades and landscaping on the site. (e) The extent, nature and arrangement of parking facilities, entrances and exits. (f) Fire and police hazards involved. (g) All other standards prescribed by these regulations for the use.
Id., 674 n. 1. The Cameo court assumed, since it was not in dispute, that the plaintiff's application had met the detailed requirements fixed by the Stratford Zoning Regulations for garden apartments. Id., 675. The Stratford Planning and Zoning Commission denied the plaintiff's application, concluding that:
 garden apartments in the area involved would increase the density of population above the prescribed maximum for the zone and would affect the mode of living in the area by creating problems of safety for children; that the limitation of privacy due to the increase of traffic would tend to decrease the value of surrounding homes; that the comprehensive plan contemplates that the major portion of land in question be preserved as a natural recreation and stream protection area; and that the proposed use is not in harmony with the intent of the commission which wrote the regulations. CT Page 4201
Id., 675-76.
The plaintiff in Cameo appealed the Stratford Planning and Zoning Commission's denial of its application alleging that "since the proposed use is permitted in an RS-3 zone and complies with the regulations prescribed for garden apartments, the commission was powerless to do more than specify such reasonable restrictions as it considered necessary, as provided in [Stratford Zoning Regulations] Sec. 20.2."
The Cameo court dismissed the plaintiff's argument holding that:
 The statement of the [plaintiff's] proposition carries its own refutation because, if the plaintiff's claim that a garden apartment which complied with the requirements of the zoning regulations must necessarily be allowed in a zone in which such a use is permitted were correct, then the further provisions in the regulations requiring approval "as to each specific use" and declaring that such a use is "of such peculiar and unusual nature in its effect on an area that in order to have it comply with the purposes of the zoning regulations it is necessary to consider it as a special case" would be meaningless. The regulations charge the commission with the responsibility of approving such use only "after making special application of . . . the [zoning] regulations in harmony with their general intent." The commission's power to stipulate such restructions as appear to it "to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare" necessarily implies the power to withhold its approval of the proposed use in its entirety if the commission finds that the circumstances warrant that action.
Id., 676-77 (emphasis added).
In both Cameo and the present case, a special permit or its equivalent was denied despite the compliance CT Page 4202 of the application with the detailed technical requirements established by the local zoning regulations for the specific proposed use. In both Cameo and the present case, the zoning authority possessed the power under the local zoning regulations to impose conditions based on general considerations contained in the local zoning regulations. Therefore, the Commission has the implied power, pursuant to Cameo to withhold its approval entirely from a special permit application despite the application's compliance with the detailed technical regulations pertinent to the specific proposed use. Accordingly, the plaintiff has failed to prove that the Commission's decision was illegal, arbitrary to an abuse of the Commission's discretion.
 B. The conclusion presumption that a permitted use does not adversely affect the traffic, municipal services, property values and general harmony of a district is not applicable to special permit decisions.
The plaintiff argues that the Commission's denial of its special permit application was illegal, arbitrary and an abuse of the Commission's discretion because the facts that the excavation and removal of earth products is a permitted use in the zone in which the plaintiff's property is located establishes "a conclusive presumption that such use does not adversely affect a district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 532-33, A.2d (1990); Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370,374, A.2d (1990).
The Commission argues that its discretion to deny a special permit application on the basis of the General Conditions contained in the Middlefield Zoning Regulations renders this conclusive presumption inapplicable.
Although the TLC and Sowin cases hold that the conclusive presumption applies to site plan and special permit decisions, the plaintiff has cited no authority, nor has research revealed any authority, which indicates that the conclusive presumption applies to special permit decisions. Furthermore, the inquiry which a zoning authority is required to undergo when determining a site plan or subdivision application is narrower than when determining a special permit application. A zoning authority "`has no discretion or choice but to approve a subdivision [or site plan application] if it conforms to the regulations adopted CT Page 4203 for its guidance;' [Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988);]" Sowin Associates v. Planning Zoning Commission, supra, 373 (South Windsor Planning Zoning Commission determining a subdivision application); Barberino Realty Development Corp. v. Planning Zoning Commission, 25 Conn. App. 392, 396:97,594 A.2d 1025 (1991) citing Allied Plywood, Inc. v. Planning 
Zoning Commission, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984) (Farmington Planning Zoning Commission determining a site plan application). On the other hand:
 When deciding whether the granting of a special permit is appropriate, a zoning authority must determine whether (1) the applicant's proposed use is permitted in the regulations, (2) the standards and the relevant zoning regulations are satisfied, and (3) the conditions necessary to protect public health, safety, convenience and property values can be established. See General Statutes Sec. 8-2.
Barberino Realty Development Corp. v. Planning Zoning Commission, supra, 396; Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307, 362 A.2d 1375
(1975) see also Dinan v. Zoning Board of Appeals, 220 Conn. 61,65 n. 3, A.2d (1991), quoting General Statutes Sc. 8-2.
The Appellate Court in Barberino Realty 
Development Corp. v. Planning Zoning Commission, supra, implicitly recognized that a zoning authority has wider discretion when determining a special permit application than when determining a site plan or subdivision application. In the Barberino case, the Appellate Court reversed the Superior Court's dismissal of the plaintiff's appeal from the Farmington Commission's denial of the plaintiff's site plan application based on general considerations contained in the Farmington Zoning Regulations. Barberino Realty Development Corp. v. Planning Zoning Commission, supra, 399-400. The Barberino court noted that:
 Our Supreme Court has held that regulations that contain only "broad legislative statement[s] of purpose comparable to that found in 8-2 of the General Statutes"; Kosinski v. Lawlor, 177 Conn. 420, 423, 418 A.2d 66 (1979); provide no standards for review in approving or denying site plans, and as such may be used "only in CT Page 4204 conjunction with and not as an alternative to the standards contained in the applicable zoning regulations." Id.
Id., 400. Because General Statutes Sec. 8-2 allows zoning authority to consider "broad legislative statements of purpose" when determining special permit applications and because, pursuant to the Cameo case, such general conditions may be used as a basis for the denial of a special permit, the wider inquiry which a zoning authority undertakes when considering a special permit affords the zoning authority a broader discretion than it has when determining a site plan and subdivision application. This broader discretion renders the conclusive presumption described in the TLC and Sowin cases inapplicable to special permit decisions.
The conclusive presumption described in the TLC and Sowin cases applies only to uses which are fully permitted and not those which are permitted only upon the approval of a special permit. The conclusive presumption espoused in the TLC case is founded upon Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82
(1979). TLC Development, Inc. v. Planning Zoning Commission, supra, 532-33. The Beit Havurah case distinguished between permitted uses for which no special permit is required and "special uses" for which a special permit is required. Beit Havurah v. Zoning Board of Appeals, supra, 441-42. The conclusive presumption established in Beit Havurah is applicable only to permitted uses for which no special permit is required. Id., 443. Both parties in the present case agree that the excavation and removal of earth products is a use permitted in the zone in which the subject premises is located only upon the approval of a special permit. Accordingly, the conclusive presumption established in the Beit Havurah, TLC and Sowin cases is inapplicable to uses, such as that involved in the present case, for which a special permit is required.
V. Plaintiff's Compliance with Middlefield Zoning Regulations Secs. 9.01 and 10.02.
The plaintiff alleges that the Commission's denial of his application for a special permit was illegal, arbitrary and an abuse of the Commission's discretion because the plaintiff complied with all the provisions contained in Secs. 9.01 and 10.02 of the Middlefield Zoning Regulations. At the hearing before this court, the Commission conceded that the defendant had complied with Sec. 9.01 of the Middlefield Zoning Regulations. CT Page 4205
The plaintiff has neither briefed nor argued at the hearing before this court that it complied with the General Conditions contained in Sec. 10.02.01 of the Middlefield Zoning Regulations. The plaintiff has briefed and argued merely that it complied with Middlefield Zoning Regulations Secs. 9.01, 10.02.02, entitled Site Development Plan Requirements, and Sec. 10.02.03, entitled Development Plan. (Plaintiff's Brief, p. 3) Furthermore, the plaintiff does not argue in its brief that its compliance with Secs. 9.01, 10.02.02 and 10.02.03 constitutes a ground for determining that the Commission's denial of the plaintiff's special permit application was arbitrary, illegal or an abuse of the Commission's discretion. The gist of the plaintiff's argument is that compliance with the General Considerations is unnecessary. In light of the above conclusion that the General Considerations may form a basis for the denial of a special permit application, the plaintiff's compliance with Secs. 9.01, 10.02.02 and 10.02.03 does not render the Commission's denial of the plaintiff's application arbitrary, illegal or an abuse of the Commission's discretion.
VI. Factual Support for the Reasons Given by the Commission for Its Denial of the Plaintiff's Application
The plaintiff alleges that the denial of its special permit application by the Commission was arbitrary, illegal, and an abuse of its discretion because there is no factual basis to support the Commission's conclusion. The plaintiff recites a lengthy list of alleged facts which tend to show that the impact of the proposed excavation project on the Whisper Wind Road neighborhood (the "neighborhood") would be minimal. These facts include: the proposed excavation activity would be located more than one thousand feet from the nearest residence in the neighborhood; the proposed excavation activity would be buffered by a one hundred foot tree buffer; the proposed excavation activity would be concluded in two years or less; traffic to and from the proposed excavation activity would use only the underdeveloped westerly branch of Whisper Wind Road, would pass in front of no residences and would pass adjacent to only two residences; the plaintiff has limited the hours of operation beyond the requirements of the Middlefield Zoning Regulations so that weekday activity would stop at 3:30 p.m.; the number of truck trips would be limited to forty-three per day; there is no alternative access to the site proposed for the activity; the Midstate Regional Planning Agency indicated that there would be no traffic hazards to the proposed egress and ingress way; all of the adjacent properties subject to the potential development are owned by the plaintiff; there is presently virtually no traffic on Whisper CT Page 4206 Wind Road; there are no encumbrances to sight or vision which would tend to create a traffic hazard; the short distance of Whisper Wind Road which traffic to and from the proposed excavation activity would utilize could be regulated through signage, speed limits or other traffic control devices. (Plaintiff's Brief, pp. 16-18.)
The plaintiff further argues that given the limitations which it is willing to comply with, the denial of its application is tantamount to forbidding trucks on Whisper Wind Road. (Plaintiff's Brief, p. 18). The plaintiff also argues that given the significant amount of development which remains to be completed, truck traffic is anticipated on Whisper Wind Road. (Plaintiff's Brief, pp. 1819.) Lastly the plaintiff argues that "the facts produced reveal no traffic congestion, no high level of traffic use, not one example of accident history, and not one reason on which to base a conclusion that limited truck traffic in this area would be hazardous in any way whatsoever." (Plaintiff's Brief, p. 19.)
The facts listed by the plaintiff do not contradict other evidence on the record which supports the Commission's decision. Anne Marie Coughlin, a resident of the neighborhood, stated that even if the excavation trucks were limited to one end of Whisper Wind Road, it would affect the people at the other end. (Return of Record ("ROR"), item 23, Transcript of Public Hearing January 23, 1991, pp. 28.)
Ed Pernell, another resident of the neighborhood, stated that the neighborhood was unique in that because it is so close to Middlefield Memorial School, neighborhood children walk to and from school each day in the school year. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, pp. 29-31.) Mr. Pernell also stated that the noise and dust created by the proposed activity would have an impact on the residential character of the neighborhood. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, p. 30.) Mr. Pernell also stated that because there are no sidewalks on Whisper Wind Road, school children are forced to walk on the road itself. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, p. 30.)
Maryann Morello, another neighborhood resident, stated that the school children begin coming home at 2:15 P.M. on school days. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, p. 32.) Ms. Morello also questioned her ability to keep her sanity listening to the truck noise. (ROR, item 23, Transcript of Public Hearing, January CT Page 4207 23, 1991, p. 32.)
John Yusan, another neighborhood resident, stated that the noise and dirt from the proposed activity would desecrate the quiet character of the neighborhood. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, p. 33.)
Mike Daigle, another neighborhood resident, stated that his two school-age children have to traverse the proposed entrance and exit way and walk on the road to the corner to pick up the bus. (ROR, item 23, Transcript of Public Hearing, January 23, 1991, p. 34.) Mr. Daigle also stated that the traffic and noise from the proposed activity would corrupt the quiet residential character of the neighborhood.
Sheila Hagar, the owner of a lot in the neighborhood, stated that she purchased her lot on the cul-de-sac portion of Whisper Wind Road because of the privacy and safety a cul-de-sac offers and that the traffic, noise and dirt from the proposed use would destroy these characteristics. (ROR, item 24, Transcript of Public Hearing, February 13, 1991, p. 12.) Ms. Hagar also stated that when she builds a house on her lot, truck traffic will pass by her house. (ROR, item 24, Transcript of Public Hearing, February 13, 1991, p. 12.)
The Commission had before it evidence that the proximity of Middlefield Memorial School increased pedestrian use of Whisper Wind Road by school children. Additionally, the Commission had before it evidence that the school children have to walk on the road itself because there are no sidewalks. Furthermore, the Commission had evidence of an overlap between the time school children began arriving home at 2:15 P.M. and the time the trucks stopped running for the day at 3:30 P.M.
The Commission also had before it the unanimous opinion of neighborhood residents that the quiet residential character of the neighborhood would be corrupted by the noise and dirt of the proposed use.
Furthermore, despite the limits within which the plaintiff is willing to confine the proposed activity, it is a factual determination for the Commission whether the scope of the proposed activity, including forty-three truck trips per day, constitutes unacceptably heavy traffic which would constitute a traffic and pedestrian hazard and would not be harmonious with existing development.[1] Spectrum of Connecticut, Inc. v. Planning Zoning Commission, supra, CT Page 4208 163-64.
The plaintiff has failed to prove that the record does not support the reasons given by the Commission.
VII. The Prejudice and Bias of the Commission
The plaintiff's brief reiterates its request for the court to allow the plaintiff an opportunity to present evidence outside the record that the Commission's denial of the plaintiff's application was based on the Commission prejudice and bias. (Plaintiff's Brief, pp. 19-26; Request for an Evidentiary Hearing, #105.) The court, Higgins, J., granted this request on January 8, 1992, and deferred the presentation of such evidence until the hearing before this court.
At the hearing before this court, the plaintiff presented no evidence regarding the bias or prejudice of the Commission. Accordingly, the court deems this claim to be abandoned by the plaintiff. Perry Brothers Partnership v. Zoning Commission, 6 CSCR 1079, 1080 (November 5, 1991, Sullivan, J.); Curry v. Planning Zoning Commission,34 Conn. Sup. 52, 54, 376 A.2d 79 (1977).
The Middlefield Planning Zoning Commission may lawfully deny a special permit application based on the General Considerations contained in Sec. 10.02.01 of the Middlefield Zoning Regulations despite the compliance of the plaintiff's application with the detailed technical requirements contained in the regulations pertaining to specific proposed use. The plaintiff has failed to prove that the record does not reasonably support the Middlefield Planning Zoning Commission's reasons for denial of the plaintiff's special permit applications. The appeal herein is dismissed.
HIGGINS, J.
ENDNOTE