CAMEO PARK HOMES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF STRATFORD

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 4—decided July 11, 1963

*James H. Aspinwall,* with whom was *Raymond B. Rubens,* for the appellant (plaintiff).

*Robert N. Hunziker,* for the appellee (defendant).

ALCORN, J.   The plaintiff owns about 19.86 acres of vacant land situated in an RS-3 district in Stratford.   Under § 4.2 of the Stratford zoning regulations, the uses in an RS-3 district are restricted primarily to one-family dwellings on lots having a minimum area of 10,000 square feet.   See Stratford Zoning Regs. §§ 2.1, 4.1.1 (1957).   Section

5.4.2 of the regulations provides, however, that in such a district garden apartment developments covering not more than twenty acres "may be approved as special cases as provided in Section 20 of these regulations." A garden apartment development is defined as "a group of two or more residence buildings, each of the buildings of which shall include not less than four . . . and not more than nine . . . separate dwelling units, which shall occupy with their accessory buildings not more than 25% of the tract of land or plot which they occupy." A dwelling unit as used in the definition means "a suite of rooms . . . arranged, intended, designed for, or used as a place of residence of a single family of not more than five . . . persons or a group of not to exceed five . . . individuals living together cooperatively." Stratford Zoning Regs. § 5.4.1 (1957). The regulations designate the uses defined as "special cases," of which garden apartments is one, as "permitted uses in the districts under which they are named, subject to approval by the [Town Planning and Zoning] Commission as to each specific use" and state that "[e]ach of these uses is declared to be of such peculiar and unusual nature in its effect on an area that in order to have it comply with the purposes of the zoning regulations it is necessary to consider it as a special case." § 20.2. The regulations require that applications for approval of all uses named as special cases shall be made to the town planning and zoning commission. § 20.1. The function of the commission in passing on such an application is defined in § 20.2.[1]

---

[1] "[Stratford Zoning Regs. § 20.2] . . . The Commission may, after public notice and hearing in the same manner required by law for zoning amendments, and by the affirmative vote of four or

The plaintiff applied to the commission for approval, as a special case, of the proposed use of its land for the construction of garden apartments, as provided in the regulations. Following a regularly called public hearing, the commission denied the application, and, from that decision, the plaintiff appealed to the Court of Common Pleas. The court sustained the action of the commission and rendered judgment dismissing the appeal, and the plaintiff appeals from that judgment, claiming that the court erred in failing to conclude that the commission had acted illegally, arbitrarily and in abuse of its discretion in denying the application.

We may assume, since it is not in dispute, that the physical plan for the proposed use complied with the detailed requirements fixed by the regulations for garden apartments. Stratford Zoning Regs. § 5.4. The commission, in its decision, set forth its reasons for denying the application and concluded that garden apartments in the area involved would increase the density of population

more members present at the hearing, approve the use after making special application of these regulations in harmony with their general intent by stipulating such restrictions as appear to the Commission to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare. Before approving any special case the Commission shall consider (a) The size and intensity of such use and its effect on the comprehensive plan of development for the town. (b) The capacity of adjacent and feeder streets to handle peak traffic loads and hazards created by the use. (c) The emission of noise, light, smoke, odor, gas, dust or vibration in noxious or offensive quantities. (d) The overall effect on tax valuation of neighborhood properties due to unusual topography of the location, the nature, location and height of buildings, walls, stacks, fences, grades and landscaping on the site. (e) The extent, nature and arrangement of parking facilities, entrances and exits. (f) Fire and police hazards involved. (g) All other standards prescribed by these regulations for the use."

above the prescribed maximum for the zone and would affect the mode of living in the area by creating problems of safety for children; that the limitation of privacy due to the increase of traffic would tend to decrease the value of surrounding homes; that the comprehensive plan contemplates that the major portion of the land in question be preserved as a natural recreation and stream protection area; and that the proposed use is not in harmony with the intent of the commission which wrote the regulations. The appeal questions the validity of the reasons assigned by the commission for its action and asserts, in substance, that, since the proposed use is permitted in an RS-3 zone and complies with the regulations prescribed for garden apartments, the commission was powerless to do more than specify such reasonable restrictions as it considered necessary, as provided in § 20.2. The statement of the proposition carries its own refutation because, if the plaintiff's claim that a garden apartment which complied with the requirements of the zoning regulation must necessarily be allowed in a zone in which such a use is permitted were correct, then the further provisions in the regulations requiring approval "as to each specific use" and declaring that such a use is "of such peculiar and unusual nature in its effect on an area that in order to have it comply with the purposes of the zoning regulations it is necessary to consider it as a special case" would be meaningless. The regulations charge the commission with the responsibility of approving such a use only "after making special application of . . . [the zoning] regulations in harmony with their general intent." The commission's power to stipulate such restrictions as appear to it "to be reasonable and the minimum necessary to protect

property values in the district as a whole and the public health, safety and welfare" necessarily implies the power to withhold its approval of the proposed use in its entirety if the commission finds that the circumstances warrant that action.

The problem then becomes simply whether the reasons assigned by the commission for its action find reasonable support in the record before it and whether the reasons are pertinent to the considerations which the commission was required to apply under § 20.2 of the regulations. So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts should be cautious about disturbing its decision. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Courts cannot substitute their judgment for the wide and liberal discretion vested in the local zoning authority when it is acting within its prescribed legislative powers. *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160; *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454; *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 71, 157 A.2d 103. The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. See *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597. It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal. *Gordon* v. *Zoning Board,* 145 Conn. 597, 604, 145 A.2d 746.

In *Summ* v. *Zoning Commission,* supra, we discussed § 8-2 of the General Statutes as amended in

1959 and in particular (p. 84) the portion providing that zoning regulations "may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from a . . . combined planning and zoning commission . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." We said (p. 87) that the term "special permit" is used interchangeably in the law of zoning with "special exception," and we said that the conditions permitting a use under a "special exception" must be found in the zoning regulations themselves. See also *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 532, 102 A.2d 316. In its essential elements, the "special case" provided for in the Stratford zoning regulations does not differ materially from the "special permit" involved in the *Summ* case, supra, 87, or from the "permitted special uses" which we discussed in *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 714, 184 A.2d 42. In each situation, the conditions permitting the use must be found in the zoning regulations themselves, and the manner in which the property owner proposes to utilize his land must satisfy those conditions. *Summ* v. *Zoning Commission,* supra.

No testimony was offered at the hearing before the commission. The issue was presented only through statements made by counsel for the plaintiff, by counsel for 361 opponents of the plaintiff's plan, by counsel for an individual opponent and by several individual opponents. From these state-

ments and the plans and maps before the commission, it appeared that while the zoning requirements for an RS-3 zone would permit a maximum of eighty single-family residences on the plaintiff's property, the plaintiff's proposed plan was to erect fifteen residence buildings containing 135 dwelling units. Each dwelling unit would have a garage, and, in addition, there would be provision for the off-street parking of 142 automobiles. The proposed plan thus contemplated 6.8 dwelling units per acre of land, whereas the plan of development for the town allocated a population density of 3.5 families per acre to this area, coinciding generally with the zoning requirements for the RS-3 district. The plaintiff's plan obviously envisioned the use of a large number of automobiles in the area. The land involved is reached by two streets. One is only twenty-eight feet wide. The other, similarly narrow, connects with a street which discharges its traffic flow into a street in Bridgeport not subject to the control of Stratford. There are no sidewalks in the surrounding area, and danger is created for pedestrians and for traffic by the narrowness and the inability of the feeder streets to accommodate an increased traffic flow. The area abutting the plaintiff's property is now occupied by single-family residences.

The commission found that the presence of a garden apartment project such as the plaintiff proposed would, in this particular area, have an adverse effect on the values of the surrounding properties, the only claim to the contrary being the opinion expressed by the plaintiff's attorney at the hearing. The commission was entitled to take into account its own knowledge of the local conditions, and the burden rested on the plaintiff to show that

the commission acted improperly. *Talmadge* v. *Board of Zoning Appeals,* 141 Conn. 639, 642, 109 A.2d 253; *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 164, 32 A.2d 635. Among the reasons given by the commission were that the proposed use would, in this particular area, result in an undue concentration of population with attendant problems of traffic congestion; that the use would not be in harmony with the comprehensive plan found in the zoning regulations or with the carefully considered plan for the development of the town; and that the use would not conserve the value of buildings or encourage the most appropriate use of the land. The record before the commission was sufficient to support those reasons, and the court below was correct in concluding that the plaintiff failed to show that the commission acted in an arbitrary, illegal or unreasonable manner in denying the plaintiff's application.

There is no error.

In this opinion the other judges concurred.