EDWARD W. DOOLEY *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued December 6, 1966—decided January 25, 1967

*Howard A. Sackett,* for the appellant-appellee (plaintiff).

*John J. Darcy,* for the appellee-appellant (named defendant).

*W. Bradley Morehouse,* for the appellee-appellant (defendant Tarinelli).

COTTER, J. The plaintiff, the owner of property in a residence zone immediately adjacent to the land in question, appealed to the Court of Common Pleas

from the action of the defendant town plan and zoning commission, which, on the application of the defendant Donald Tarinelli, changed the zone of Tarinelli's property from a residence B district to a designed residence district No. 1, hereinafter sometimes referred to as DRD-1. The plaintiff and the defendants have both appealed from the judgment of the Court of Common Pleas sustaining the commission's action.

The property covered by the change of zone consists of approximately 12.34 acres in Southport in the town of Fairfield. It has a frontage, on the north, of 1040 feet more or less on Mill Hill Terrace and drops downhill in a southerly direction to Kings Highway West, which bounds it on the south for a distance of approximately 155 feet.

The defendant's appeal challenges the court's finding that the plaintiff is aggrieved. Since, for reasons hereinafter pointed out, the commission's decision was correct, it is unnecessary to consider the plaintiff's standing to attack it.

The gravamen of the plaintiff's claim in this court is that the action of the commission was violative of the comprehensive plan, constituted spot zoning, and was illegal, arbitrary and in abuse of the discretion vested in it. Pursuant to the town charter and, presumably acting under General Statutes § 8-23 as a planning commission, the plan and zoning commission in 1961 adopted what it termed a comprehensive plan "to serve as a guide to the future growth, improvement, and development of the Town of Fairfield." It also recognized at the time "the necessity for regularly reviewing, updating and revising" such a plan "in the changing conditions and unforeseen needs" of the town. There is a difference in the functions of a zoning commis-

sion and the functions of a planning commission even though, as in Fairfield, these functions may be exercised by a single commission as provided for under General Statutes § 8-4a. See *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 176, 169 A.2d 268. "Its duties in each category are separate yet related." *Purtill* v. *Town Plan & Zoning Commission,* 146 Conn. 570, 571, 153 A.2d 441. The 1961 plan of development is properly called a master plan. *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179.

Under the general law, the master plan does not control the zoning commission in its enactment of zoning regulations. The master plan, in its designation of appropriate uses for various areas in a town, is merely advisory. *Faubel* v. *Zoning Commission,* 154 Conn. 202, 207, 224 A.2d 538. "In the last analysis, therefore, the comprehensive plan in accordance with which zoning regulations are to be adopted is such a plan as the zoning commission devises." *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822. In the original plan of development of 1961, the planning commission recommended that the land in question be placed in the zone category of "designed light industrial." At the time of the hearing, however, this land was classified in a residence B zone.

Zoning regulations for Fairfield were first adopted in 1925 and have, since then, from time to time, been amended or revised. These regulations were formulated in accordance with a comprehensive plan which was in existence when the master plan of land use was adopted in 1961. The comprehensive plan is to be found in the zoning regulations themselves, which are primarily concerned with the

use of property. *Lebanon* v. *Woods,* 153 Conn. 182, 188, 215 A.2d 112; see General Statutes § 8-2. Such a plan has been described as one which requires the zoning commission to shoulder the burden of "adopting the ordinance or amendment only after study and consideration of all the elements involved." 1 Rathkopf, Law of Zoning and Planning, p. 9-1. The commission, in exercising its power to adopt zoning regulations, acts as a legislative body. *Hills* v. *Zoning Commission,* 139 Conn. 603, 608, 96 A.2d 212.

A residence B district, in which the property in question was zoned at the time of the public hearing, permits the construction of one-family houses on lots having a minimum area of 6000 square feet or the construction of two-family houses on lots having a minimum area of 9000 square feet. A designed residence district No. 1 zone permits the construction of so-called garden apartments, or row houses, in addition to the uses allowed in the former zone. Actually, the commission had already granted approval for a subdivision of the property comprising forty-four lots for two-family houses. This approval was preliminary and would have become final only on the developer's satisfying a number of conditions customarily attached to preliminary approvals.

The commission conducted a full public hearing, at which a large number of exhibits, including maps and 117 color transparencies or photographs, were introduced. From these the commission had before it evidence that the property consisted of 12.34 acres of hilly, rocky, heavily wooded and undeveloped land, and that many of the houses in the surrounding area were "modest, bungalow type single and two-family houses." The commission also had before it a statement of a realtor that a change

to a DRD-1 zone would permit the property to be developed in a more desirable manner from the standpoint of construction economics and design since the high cost of site work required to clear trees and ledge would be less and there would be opportunities "to cluster the proposed town houses or garden apartments in carefully designed units." The plaintiff describes the property in question as a classic example of "marginal land" left behind during a long period of one-family residential development. The evidence also shows that the property is in close proximity to the Boston Post Road and the Connecticut Turnpike. Both the eastbound and westbound exits and entrances of the Connecticut Turnpike are within a short distance of the property, which lies approximately three-quarters of a mile from the Westfair Shopping Center, on the Post Rost to the west, and half a mile from the Southport Village Shopping Center, south of the Post Road. To the south of the parcel, on Kings Highway West and the Post Road, is a combination of business and industrial uses. An automobile body shop, for instance, is located on Kings Highway West across the street from the property in question.

A memorandum of a professional planner was presented to the commission and showed that the proposed subdivision under a residence B district zone would yield land coverage of 15.3 percent and no open space, whereas development under a DRD-1 zone would yield 2.5 acres of open space and involve only 11.7 percent land coverage. The commission, in view of this comparison, was in a position to conclude that the change of zone requested might enhance the use of the property rather than downgrade it since there would be more open space,

with fewer driveways, heating units and other accessories, than if two-family houses were constructed under the existing zoning regulations.

It is apparent that the zoning commission considered the recommendations in the plan of development adopted in 1961 and voted the change in accordance with it and the general comprehensive plan of zoning when it enumerated the following reasons for its action, viz.: "1. The proposed change is in accordance with the 'D. R. D. #1' or garden apartment criteria as stated in the . . . [master plan] which recommends that the apartment site be: a. Located on or near major highways and public transportation; b. Can be served by sewer and water lines; c. Are within walking distance of shopping, church and recreational facilities; and d. Located in transitional area between residential or institutional uses and business or industrial development, where the special provisions contained in the designed district regulations can be applied effectively and beneficially. 2. The proposed designation of 'Designed Residence District' is appropriate in this transitional area . . . . 3. The proposed change of zoning designation shall provide a reasonable use of this land in relation to the existing topography and extensive ledge and rock condition. . . ." See *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 124, 127 A.2d 822.

The actual development of the parcel does not become a matter for consideration by the commission until after the property has been zoned for DRD-1 uses and a development proposal is filed. At that time, a further public hearing is held, and altogether different criteria are applied which deal with the proposed development of the land. See *Miss Porter's School, Inc.* v. *Town Plan & Zoning*

*Commission,* 151 Conn. 425, 428, 198 A.2d 707. In voting the change in classification of the land in question to a DRD-1 zone, the commission has placed it in a zone which is subject to specific and stringent limitations contained in the regulations. A prospective developer must submit detailed plans to the commission for approval of site plans, building height, lot area, access, setbacks, floor area, aggregate lot coverage (which is limited to a maximum of 20 percent of the entire area), architectural design, and other specifications as provided in §§ 21.1 through 21.5.10 of the zoning regulations. The procedure outlined affords "ample protection to anyone who may be immediately affected." *Summ* v. *Zoning Commission,* 150 Conn. 79, 88, 186 A.2d 160. In approving the application for a DRD-1 zone, the commission is implementing the concept of a more flexible land use policy which provides for adequate safeguards. We have held that an area may properly be rezoned from a one-family dwelling district to a multiple dwelling district without doing violence to the comprehensive plan. *Miss Porter's School, Inc.* v. *Town Plan & Zoning Commission,* 151 Conn. 425, 430, 198 A.2d 707; see *Zandri* v. *Zoning Commission,* 150 Conn. 646, 649, 192 A.2d 876. The reasons assigned by the commission for its action are adequately supported by the record before it. *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 266, 205 A.2d 774; *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427; *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886. The plaintiff concedes that the property is near a major highway and public transportation route, as well as the fact that it can be serviced by waterlines. There was evi-

dence that it would be possible to run sewers to the site because a sanitary sewer system was in existence within 1200 feet. The presence of sewers must be an integral part of the site plan, under the regulations, to receive approval of the commission. Fairfield Zoning Regs. § 21.5.8. There was ample evidence before the commission for it to adopt the vote it did based on the reasons it gave. The change cannot be said to be "out of harmony with the comprehensive plan for the good of the community as a whole" and cannot therefore be classified as spot zoning. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241. The amendment adopted by the zoning commission was a logical development of the town's comprehensive plan and did not constitute an abuse of the commission's discretion. *Allin* v. *Zoning Commission,* 150 Conn. 129, 133, 186 A.2d 802. The action taken by the commission involved a fairly debatable question which was within its province, acting in its legislative capacity, to resolve. *Zandri* v. *Zoning Commission,* supra, 650. "So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts should be cautious about disturbing its decision. . . . Courts cannot substitute their judgment for the wide and liberal discretion vested in the local zoning authority when it is acting within its prescribed legislative powers. . . . The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. . . . It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the

courts can grant relief on appeal." *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886; *Lupinacci* v. *Planning & Zoning Commission,* 153 Conn. 694, 699, 220 A.2d 274.

There is no error in either appeal.

In this opinion the other judges concurred.