[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the Presbytery of Southern New England, Inc. and the First Presbyterian Church of New Haven. The Presbytery owns two adjacent lots of land known as 704 Whitney Avenue and 724 Whitney Avenue, for the use and benefit of the church. The 704 Whitney Avenue property is improved as a church building, which is used by the church as its house of worship, with incidental administrative and classroom spaces. The 724 Whitney Avenue property is improved with a building now used as a two family residential building. Both parcels are within the district designated RH-1 under the New Haven Zoning Ordinance. On March 18, 1994, the church applied to the defendant New Haven Board of Zoning Appeals for a special exception to permit the use of a portion of the property at 724 Whitney Avenue as its parish house. The New Haven Zoning Ordinance permits peripheral expansion of religious institutions in an RH-1 district by special exception. Although the Planning Commission, following a mandatory referral, recommended approval, the Zoning Board of Appeals at a special meeting on April 26, 1994 denied the application. Its notice of decision gave no reasons for the denial. The minutes of the meeting at which the denial was voted upon contain the following language:
 "It was determined that the proposed use would generate increased noise and traffic. The board found that expansion of such activities into the subject property would be unduly burdensome to the neighborhood, CT Page 1574 particularly to the abutting property. The subject property is located in extreme proximity to the abutting residential home located at 730 Whitney Avenue. The driveway to 724 Whitney Avenue is situated directly parallel to the windows of the abutting residential home. Given this fact and the types of uses proposed, the abutting property owner would be adversely affected. Additionally, there was testimony at the public hearing relating to parking problems in the area. The board has concerns with regard to the impact the proposed use would have on the parking situation as well as its effect on the residential character of the subject property. Permitting the proposed use would not be in accord with the public convenience and welfare, and thus voted 5 — 0 to deny the application."
AGGRIEVEMENT
At the trial of the matter, the pastor of the First Presbyterian Church of New Haven testified that the real estate is owned by the Presbytery of Southern New England, Inc. and, in effect, is held in trust for use by the parish. Although the precise nature of the relationship between the Presbytery of Southern New England and the parish was somewhat unclear to the court at trial, it is clear that the property affected by the decision is owned by the Presbytery and used by the parish, and accordingly the court finds each plaintiff to be aggrieved.
DISCUSSION
Although no reference to the specific parking requirements of Section 11.B.2 of the Zoning Ordinance were contained in the minutes of the board's decision, both parties argued and briefed the question of compliance with specific parking requirements.
Section 11.B.2 mandates that prior to the granting of a special exception for expansion of a religious institution, an applicant must demonstrate that the parking requirements set forth in Section 11.B.2.b.(D) of the Zoning Ordinance have been satisfied. The City then argued that the maximum occupancy of the proposed use on the subject property would be 50 and that in CT Page 1575 applying the parking ratio of 1:8 set forth in Section 12.B.1.d to the proposed use, plaintiffs are required to demonstrate the availability of 6 parking spaces solely for the classroom use. Plaintiffs clearly demonstrated the availability of more than 6 parking places. However, some of the parking spaces were located on the residential property at 724 Whitney Avenue, and some were located on the church building property at 704 Whitney Avenue.
Section 12.E.1.d provides in pertinent part:
 "Religious institutions, including parish houses, rectories, and other facilities normally incidental to places of worship but excluding funeral homes and cemeteries. Maximum parking: One parking place for each eight seats in the largest place of assembly of such institution, based upon the maximum occupancy of both fixed and movable seats, located on the same lot or within 300 feet walking distance."
If the parish is allowed to count parking which is available on both the residential property and the church property, there is no question that it has more than enough parking space. However, the City argues
 ". . . [N]owhere in the record does the plaintiff demonstrate that there is excess parking at 704 Whitney Avenue that can be made available for the proposed activities at 724 Whitney Avenue." [Emphasis in original.] [Defendant's Brief, dated 11-28-94, at 6.]
The City is correct in its assertion that there is no demonstration of excess parking. The record does not appear to contain any information detailing the parking that is available for the church building or the parking that would be required for the church building. It is clear that if the church building contains more than 50 seats, it would require more parking than the new proposed use. Further the court notes that Section 12.B.d previously quoted contains the perhaps unusual requirement for "one parking space for each eight seats in the largest place of assembly
of such institution. . . ." [Emphasis supplied.] It is not clear from the record whether the church has adequate parking for its own needs or whether it is a pre-existing nonconforming use in regard CT Page 1576 to the parking requirements. It is clear that the question of the adequacy of the church parking is not presently before the court. It also would appear to be a reasonable assumption that the church contains more than 50 seats so that no parking is required for the proposed new use and the parking is adequate, for whatever reason, for the "largest place of assembly". Because parking is required only for the "largest place of assembly", the court rejects the City's argument that there is an obligation on the part of the parish to show any parking for the proposed use.
The parties are in agreement that the proposed use may be permitted in this zone by special exception. The special exception is set forth in Section 63D. Section 63.D.3.a-d directs the Zoning Board of Appeals to look at the nature of the proposed site, the resulting traffic patterns, the nature of the surrounding area and the proximity to dwellings, churches, schools, public buildings and other places of public gathering. The section also contains a general provision that the proposed use shall be examined to determine that the "existing use or feature is in accord with the public convenience and welfare after taking into account" the items set forth above in subsections a-d.
Other than the specific parking requirements discussed previously in this opinion, the local board's rejection of the proposal is based upon authority contained in Whisper WindDevelopment Corporation v. Planning Zoning Commission,32 Conn. App. 515, 519 (1993), aff'd per curiam, 229 Conn. 176 (1994). Prior to Whisper Wind, there had been some disagreement whether the Supreme Court opinion in Cameo Park Homes Inc. v. Planning ZoningCommission, 150 Conn. 672 (1963), supported a conclusion that a special permit application may be denied on the basis of the general considerations in a special permit regulation. However, inWhisper Wind the Appellate Court held in a 2-1 decision, with Chief Judge Dupont dissenting, that:
 "In essence, the plaintiff argues that once the specific requirements in Section 9 are met, the permit must be granted, subject to any limitations that may be placed on that approval under the terms of section 10.02. Thus, according to the plaintiff, section 10.02 cannot serve as the sole basis for denying a special permit application, but can serve as a basis only for attaching conditions to the proposed plan. We do not agree." CT Page 1577
Whisper Wind, at 520.
The Appellate Court went on to hold
 "It is well settled that in granting a special permit, the applicant must satisfy all
conditions imposed by the regulations." [citations omitted] [emphasis in the original].
Whisper Wind, at 521.
Finally, the court concluded:
 "Therefore, the plaintiff's claim that the general health, safety and welfare requirements contained in the regulation must be considered only for the purpose of placing conditions on a special permit and may not be considered in determining whether to deny or grant the permit must fail."
Whisper Wind, at 522.
The majority in Whisper Wind held that if the record before the agency justified the conclusion reached by the regulatory agency, the regulatory agency could rely on general conditions to deny a special permit or a special exception.
As pointed out by Chief Judge Dupont in her dissent,
 "The function of a special permit is to allow a property owner to use his property in a manner expressly permitted under the zoning regulations, subject to certain conditions necessary to protect the public health, safety, convenience and surrounding property values . . . . The presumption precludes a commission from denying a special permit because the use does not coincide with the general harmony of the particular zone."
Whisper Wind, at 525-526. CT Page 1578
Although the church attempts to distinguish Whisper Wind,
claiming that the rather significant gravel operation located behind the residences involved in that case justifies a factual distinction between Whisper Wind and the instant case, it appears to the court that the church's argument is really no different than the point made in Chief Judge Dupont's dissent. Unless and until the holding of Whisper Wind is in some manner limited or clarified by a subsequent decision of the Appellate Court or the Supreme Court, this court is of the opinion that the City of New Haven is entirely free to deny a special permit because of a violation of general conditions, so long as the violation is supported by the record. The Board found that the special exception application would not serve the public convenience and welfare, particularly as the proposed use would have a detrimental effect on the adjacent residential home site located at 730 Whitney Avenue. That finding was supported in the record which revealed that the activities proposed would result in an increase in traffic and noise and adversely impact the privacy of residents living in the abutting home. The record also indicates area concerns relating to parking. The record supports the conclusion that 724 Whitney Avenue is situated very close to the residential home at 730 Whitney Avenue. The court recognizes that it may not substitute its judgment for that of the Board so long as an honest judgment has reasonably and fairly been made after a full public hearing. Stankiewicz v. ZoningBoard of Appeals, 15 Conn. App. 729 (1988). Faced with the discretion vested in the Board of Appeals in finding facts, the court holds that the Board's finding of a violation of the general provisions was supported by the record before it.
Finally, the court recognizes that the Constitution of the State of Connecticut expressly recognizes in Article 7, the right of its citizens to "build and repair houses for public worship. "
The Appellate Court has held in Grace Community Church v.Planning Zoning Commission of the Town of Bethel,42 Conn. Sup. 256, 263 (1992),
 "Particularly close scrutiny is required here since the commission's action directly implicates freedom of religion under the state and federal constitution."
However, the Supreme Court has held that churches are subject to local zoning regulations regarding their location, and that the application of such thereto does not violate the constitutional CT Page 1579 guarantee of freedom of religion. St. John's Roman Catholic ChurchCorporation v. Darien, 149 Conn. 712, 720 (1962). Thus, while the court recognizes that the constitutional provision may mandate a certain deference to church structures, particularly when the issue faced by a court concerns a matter of whether or not something is a religious use, there does not appear to be anything in the constitutional guarantee which benefits the plaintiffs in the instant case in their claim that the City may not reject their permit based upon a general standard. Neither does there appear to be anything in the constitutional guarantee which changes the burden of proof when the court is reviewing the record to determine whether the denial of the permit is supported by the record.
CONCLUSION
Accordingly, while the court is of the opinion that the proposed use of the parish house has sufficient parking to comply with the specific parking requirement, the court is further of the opinion that Whisper Wind justifies the City in denying the permit because of a general violation and that the record supports the City's action in this regard. Accordingly, the appeal is dismissed.
BY THE COURT:
KEVIN E. BOOTH, JUDGE