[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5331
I. Factual and Procedural Background
On October 13, 1992, the plaintiff, Benjamin Ancona, submitted an application to the defendant, the Berlin Inland Wetlands and Watercourses Commission (hereinafter "defendant commission"), for a permit to build a single family home on a 1.26 acre portion of a 7.7 acre parcel owned by him. (Record, R-1) On December 7, 1993, the defendant commission denied plaintiff's application. (Record, R-4, R-5) Notice of that denial was properly published in The Herald on December 13, 1993. (Record, R-8)
Subsequent to the publication of that decision, plaintiff appealed to this court by writ, summons, and complaint, dated December 21, 1994, and served on the defendants on December 23, 1993. The plaintiff claims in his appeal that the defendant commission acted erroneously in denying plaintiff's application since he had met his burden of showing that his project would not negatively affect any of the factors enumerated in either Conn. Gen. Stat. § 22a-41 or § 10.2 of the town of Berlin wetlands regulations. The plaintiff further claims there was no "substantial evidence" to support the defendant commission's denial. Finally, plaintiff argues that the denial constitutes a taking of his property.
The defendant commission filed its answer and original return of record, dated January 25, 1994. After the initial return of record was filed, the plaintiff filed a motion, dated February 25, 1994, to refer the matter back to the defendant commission for an evidentiary hearing to complete the record. According to plaintiff's motion, there had been a problem with the recording system and as a result, there was no transcript and/or extensive minutes of the public hearing. That motion was granted on March 8, 1994. (Jackaway, J.) The parties subsequently entered a stipulation, dated March 16, 1994, in which they agreed that the defendant commission would hold a second hearing and any transcript of that proceeding would be included in the defendant commission's return of record.
A second hearing was held on plaintiff's application before the defendant commission on May 3, 1994. (Record, A-1) At plaintiff counsel's request, this second hearing was continued CT Page 5332 until June 7, 1994. (Record, A-4) On June 7, 1994, plaintiff's application was reheard. (Record, A-5) After rehearing, the matter was tabled by the defendant commission. The plaintiff's application on rehearing was denied on July 5, 1994, for the following reasons:
 1. The impact of the wetlands. The applicant is correct in saying they are (sic) not affecting the wetlands but the natural buffer area around the wetlands is being disturbed. The application did not provide any mediation such as plantings or other factors that could be considered. The adjacent property to the wetlands is being raised and a lawn is being created. The run-off from the lawn will go directly into the wetlands. Mitigation can be established but the applicant did not establish mitigation.
2. The impact to the floodplain.
 3. The issue of safety is another concern for the applicant and surrounding neighbors. Two to four feet of water is enough for a child to drown in. (Record, A-6)
Subsequent to that rehearing, the defendant commission filed an Amended Return of Record, dated November 7, 1994, containing ten additional items. On November 10, 1994, plaintiff filed a motion to supplement the amended return, claiming that the defendant commission failed to include a number of exhibits from the rehearing in its amended return. That motion was granted by the court (Stengel, J.) on November 28, 1994, and included seven additional documents.
Plaintiff filed his brief with the court on December 14, 1994. Defendant filed its brief with the court on January 17, 1995.
The court heard oral argument on the briefs on May 5, 1995.
II. Discussion
CT Page 5333
A. Court's Standard of Review
In any land use matter, the court's scope of review is limited to the record. The court must first determine from the record whether there was a logical and rational basis for the agency's or commission's decision. The court is not allowed to substitute its judgment for that legally vested in the agency. This limitation on the scope of review is fundamental. See Cos Cob Volunteer Fire Co. No. 1. Inc. v. FOIC, 212 Conn. 100,105 (1989).
Specifically, where a land use commission ". . . has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." DeMaria v. Planning and Zoning Commission,159 Conn. 534, 541 (1970). See also Welch v. Zoning Board ofAppeals, 158 Conn. 208 (1969). If there is sufficient evidence to support the finding and decision of the commission, the decision must be upheld. East Haven Economic Development Commissionv. Department of Environmental Protection, 36 Conn. Sup. 1, certification denied, 178 Conn. 755 (1979).
Therefore, if the reasons have been stated on the record, the court's sole review is to determine whether the reasons assigned by the commission for its action find reasonable support in the record before it and whether the reasons are pertinent to the consideration which the commission was to apply under the regulations. Cameo Park Homes, Inc. v. Planningand Zoning Commission, 150 Conn. 672, 677 (1963).
B. Aggrievement
The plaintiff in this appeal is the applicant who is the property owner. At the hearing on aggrievement the plaintiff testified in his own behalf, stating to the court that he was in fact the owner of this property which he had acquired through purchase in 1984.
Section 22a-43 of the Connecticut General Statutes specifies in pertinent part: ". . . any person aggrieved by any . . . decision . . . or any person owning or occupying land which abuts any portion of land or is within a radius of ninety CT Page 5334 feet of the wetland or watercourse involved in any . . . decision . . . may . . . appeal to the superior court. . .". Our courts have found a property owner/applicant whose application has been denied to be aggrieved. Winchester Woods Associatesv. Planning and Zoning Commission, 219 Conn. 303, 308 (1991);Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968). As indicated, the plaintiff's testimony at the hearing was that he was the owner of and applicant for the property. This testimony was not contradicted. Accordingly, the court finds that the plaintiff is aggrieved and therefore, has standing to pursue the appeal.
C. Claims of Law
In conducting its record review, this court must look to the three reasons given by the defendant commission as the bases for its decision and determine if any one of those reasons is supported by the record. If any one of the defendant commission's reasons is supported in the record, this court must affirm the commission's decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-540 (1987). The court must also look at plaintiff's claims in respect to the defendant commission's reasons for denial. In the instant case the plaintiff claims the defendant commission's decision is erroneous for three reasons: first, the plaintiff showed that the proposed project does not negatively affect any statutory or regulatory factors which the defendant commission was to consider; second, there was no substantial evidence to support the denial; and third, the denial constitutes a taking of the plaintiff's property.
This court will analyze each of the respective party's claims in light of the defendant commission's three reasons for denial of the plaintiff's application.
1. Defendant Commission's reasons for denial
a. Impact on the wetlands.
The defendant commission's first reason for denial was the project's impact on the wetlands. That reason stated in full:
 The impact of the wetlands. The applicant is correct in saying that they are not affecting CT Page 5335 the wetlands, but the natural buffer area around the wetlands is being disturbed. The application did not provide any mediation such as plantings or other factors that could be considered. The adjacent property to the wetlands is being raised and a lawn is being created. Runoff from the lawn will go directly into the wetlands. Mitigation can be established, but the applicant did not establish mitigation.
Plaintiff argues that since the project is not development in the wetlands, there is no impact on the wetlands; plaintiff argues that the defendant commission outwardly agrees with this point. (Record, A5 at p. 2) Plaintiff's argument is an incomplete statement of what the record says. The record clearly shows in the first reason for the defendant commission's denial (cited above) that ". . . the applicant is correct in saying they are not affecting the wetlands but the naturalbuffer area around the wetlands is being disturbed." (Emphasis added) Such an indirect impact on wetlands is within the definition of a "regulated activity" as defined in section 2.1 of the town's wetlands regulations: "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses. . .". (Record, R-9, p. 6)
"Pollution" is defined as "harmful thermal effect or the contamination or rendering unclean or impure of any waters of the state by reason of any waste or other materials discharged or deposited therein by any public or private sewer or otherwise so as directly or indirectly to come in contact with any waters. This includes, but is not limited to, erosion and sedimentation resulting from any filling, land clearing or excavation activity." (Record, R-9, p. 6)
"Discharge" is defined in the regulations as well: "emission of any water, substance, or material into wetlands or watercourses whether or not such substance causes pollution." (Record, R-9, p. 4)
The defendant commission is also authorized through section 7.5 of its regulations to look at the "nature and anticipated effects of [a significant] activity". To be "significant" CT Page 5336 means among other things to be any activity which may inhibit the natural dynamics of the watercourse system, (Record, R-9, pp. 7-8; any activity which causes substantial turbidity, siltation, or sedimentation in a wetland or watercourse, (Record, R-9, p. 8); any activity which substantially diminishes the natural capacity of a wetland or watercourse to sustain wildlife and/or prevent flooding, (Record, R-9, p. 8); any activity which reduces the flow of a natural watercourse or groundwater levels, (Record, R-9, p. 8); and any activity causing or potentially causing wetland or watercourse pollution, (Record, R-9, p. 8).
Plaintiff's application involved the construction of a single family residential dwelling within an extensive floodplain which in turn involved excavation activities quite near the wetlands as well as regrading of the property for a lawn which would discharge directly into the wetlands. Specifically, plaintiff proposed to excavate fill from one portion of the sits and deposit it on another portion of the site. This excavation was proposed to take place within 10 to 20 feet of the wetlands edge.
The defendant commission had legitimate concerns about protection of these wetlands and had the commensurate obligation under its own regulations to ensure such protection. Its analysis of the offered mitigation by the plaintiff, hay bales shown on the plan, did not satisfy the defendant commission's concerns. In its first reason for denial, the defendant commission stated that it felt ways to mitigate wetlands' impact existed; the plaintiff simply did not adequately show such ways in its application.
Case law is clear that activity that occurs in nonwetland areas, but which adversely affects wetlands areas can be regulated by the agency. Cioffoletti v. Planning and ZoningCommission, 209 Conn. 544, 558 (1989); Aaron v. ConservationCommission, 183 Conn. 532, 542, 544 (1981). As cited above, this was clearly a concern of the defendant commission. At the time of the denial, Commissioner Ferraro stated that particular concern in the first reason in his motion for denial. (Record, A-6, p. 2) Accordingly, the court finds the defendant commission's first reason for denial to be an appropriate one and not one which was exercised outside the scope of the defendant commission's authority. CT Page 5337
b. The impact on the floodplain.
The second reason for the defendant commission's denial was the proposed project's impact on the floodplain. Both parties concur that construction of a home within a floodway is prohibited. (See plaintiff's brief at p. 14; defendant commission's brief at p. 16.) The parties disagree as to whether this construction is within or outside of a floodway.
Plaintiff presented expert testimony from Hewitt which concluded that construction would take place "entirely within the floodway fringe", a permissible area, and not in the floodway itself, an impermissible area. (Record, A-5, p. 4) Contrary to plaintiff's representation, the defendant commission did have other expert testimony regarding the location of this floodway from the town's engineer. His opinion concluded that plaintiff's proposed home would be within the floodway. (Record, A-4, pp. 1-2) Faced with contradictory testimony, the defendant commission was obligated to weigh the same and is not required to believe the plaintiff's expert over the town's staff engineer. Manatuck Associates v. Conversation Commission,28 Conn. App. 780 (1992). No agency is required to believe any witness, not even an expert. Id. at 793, citingManor Development Corporation v. Conservation Commission,180 Conn. 692, 697 (1980). The credibility of witnesses is a matter within the province of the agency. Feinson v. ConservationCommission, 180 Conn. 421, 425-426 (1980); Lawrence v.Kozlowski, 171 Conn. 705, 708, cert. denied, 431 U.S. 969
(1977).
In this instance, the defendant commission chose to believe its own staff expert as to the location of the floodway. Since the defendant commission's choice in this regard does not contradict the law, the court finds the defendant's second reason for denial to be a legitimate one.
c. The impact on safety.
The defendant's third and final reason for its denial of plaintiff's application was "the issue of safety [as] another concern for the applicant and surrounding neighbors. Two to four feet of water is enough water for a child to drown in." Plaintiff argues that there was no substantial evidence to support this reasoning; there was no evidence offered that plaintiff's proposed activity posed a safety hazard. The defendant CT Page 5338 commission's brief does not specifically address the commission's third reason for denial. The court concurs with the plaintiff; even though neighbors testified about flooding, there was no substantial evidence to legitimize this third reason for denial. Accordingly, this court finds that the defendant commission's third reason for denial was not an appropriate one.
2. The constitutional issue of "taking".
"The test for determining whether a taking has occurred cannot be resolved on the basis of the denial of a single application . . . or even the denial of multiple applications."Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262,268 (1992) citing Gil v. Inland Wetlands Agency, 219 Conn. 404,407 (1991). "Instead the reviewing court must first establish that there was a final authoritative decision by a commission and then conduct a two-pronged analysis. That analysis must result in two conclusions. First, the landowner's expectation of development must be found to be factually reasonable and second, the denial of the application must constitute a taking either as a practical confiscation of property or by application of a balancing test." Id. "It is the plaintiff's burden to prove that there was a final authoritative decision, that the expectation for development was reasonable and that the property cannot be used for any reasonable purpose or that the denial of a permit caused the owner great economic deprivation without a significant public benefit. D'Addario v. Planning Zoning Commission, 25 Conn. App. 137, 147-148 (1991).
Plaintiff argued at the hearing that since this was his second application to build a house on this same parcel of land and this second application was denied, there has been a taking. Plaintiff argues in his brief that when he purchased this property, he had the reasonable expectation that he could build a house on it. He further argues that there is no other viable alternative to the property's development. Finally, he argues that his private detriment outweighs any public benefit which has been caused by the defendant commission's denial of his application.
This court is not persuaded by the plaintiff's arguments. "Because a future application with a different plan for construction and excavation may be granted, there has not yet been a final authoritative decision by the commission. Without such a decision, a taking cannot have occurred. Gil, supra. CT Page 5339 See also Brecciaroli v. Commissioner of Environmental Protection,168 Conn. 349 (1975).
In this case in the very language of its denial, the defendant commission "invites" the plaintiff to submit another application which addresses its concerns about the wetlands impact. The defendant commission stated in pertinent part:". . . The application did not provide any mediation such as plantings or other factors that could be considered. . . Mitigationcan be established but the applicant did not establishmitigation." (Record, A-6, p. 2) (Emphasis added) Clearly, the defendant commission has not foreclosed other options for the plaintiff. In fact, the defendant commission has articulated its concerns and encouraged the plaintiff to address them in a future application. Based on this evidence in the record, this court does not find that the defendant commission's denial of plaintiff's application constituted an unconstitutional taking. The plaintiff has not proven and the record does not support that plaintiff has met his burden of showing that the defendant commission will not allow any reasonable alternative use of his property. Huck, supra at 553.
3. No reasonable and prudent alternative.
Section 22a-41(b) of the Connecticut General Statutes states in part: ". . . a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist". Based on the defendant commission's concern regarding mitigation and based on its denial in part because mitigation was not fully addressed in plaintiff's application, it is clear that the defendant commission felt that alternatives did exist, alternatives which include mitigation to address the commission's concerns. A statement by plaintiff's attorney does not satisfy this criterion. On this basis then, the defendant commission properly denied the plaintiff's application.
III. Conclusion
Based on this court's foregoing analysis, this court finds that the first and second reasons stated by the defendant commission in support of its denial of plaintiff's application are supported by the record. The third reason was not supported by the record. The defendant commission's denial does not amount to an unconstitutional taking. Plaintiff never presented evidence, aside from mere assertion, that no feasible and CT Page 5340 prudent alternatives exist aside from this application. Accordingly, the decision of the defendant commission is affirmed. Plaintiff's appeal is dismissed.
SUSAN B. HANDY JUDGE, SUPERIOR COURT