[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, SBA Communications, Inc. ("SBA"), has brought this appeal from the decision of the defendant, Zoning Commission of the Town of New Milford ("Commission"), denying SBA's special permit application to construct a personal wireless telecommunications facility pursuant to C.G.S. § 8-8 (b). The facility was to consist of a 195 foot monopole and associated base station equipment within a fenced area on property located in an R-80 zone; such a wireless facility is permitted in that zone subject to special permit approval by the Commission.
SBA provides services to various licensed personal wireless telecommunications carriers in Connecticut. These services include the location, leasing, zoning, construction, and ownership of facilities. Carriers wishing to utilize SBA monopoles to improve their wireless coverage attach antennas to the monopole and locate the related equipment adjacent to the monopole after receiving the necessary regulatory approvals. Each monopole is therefore capable of supporting the antennas of several licensed carriers. SBA determined several such carriers, to include Omnipoint Communications ("Omnipoint"), provided either inadequate or no services to the New Milford area — particularly portions of the heavily traveled Routes 202 and 109 — and it therefore determined the area within which a facility must be located in order to provide coverage to the area not presently serviced. SBA entered CT Page 8390 into a lease with Gary and Linda Sullivan to construct the facility on property they owned at 137 Park Lane Road (Route 202) in New Milford. Their property consists of 10.4 acres of which 6,400 square feet were leased by SBA for the proposed facility. Under the terms of the Option and Land Lease the Sullivans and SBA entered into on April 15, 1999, and the Addendum to the agreement of the same date, the lessee (SBA), upon exercise of the option, would pay monthly rental to the lessors for an initial term of five (5) years each and for automatic renewal periods of up to five (5) additional terms of five (5) years each.
On or about June 30, 1999, SBA submitted a Special Permit and Site Plan Review Application ("Application") and related documents to the Commission to construct the facility. The applicant was specifically identified as "SBA Communications, Inc." who is admittedly not a licensed wireless provider or carrier; Omnipoint is, however, a licensed carrier and, at the October 19, 1999 hearing before the Commission, an engineer for Omnipoint asked it be considered a co-applicant and asserted Omnipoint would in fact locate in the tower if this Application were approved.
The Commission opened the public hearing to consider the Application on August 10, 1999, and continued the hearing for a total of six (6) additional public sessions until October 19, 1999, at which time the hearing was closed. The Commission conducted a site walk on October 5, 1999. It hired an outside consultant, Walter Cooper of Flack Kurtz, LLP, who was present at the time of the site walk and who faxed to the Commission, on October 14, 1999, a written opinion with comments. The Commission heard testimony from Mr. Thomas Flynn, a zoning consultant for SBA, Mr. Haider Syed, an Omnipoint radio frequency engineer, various residents and taxpayers — all of whom opposed the Application for multiple reasons to include aesthetics and safety; it considered extensive documentary evidence offered to include site plans, propagation maps (with and without site), a map of the search ring, photographs, a tower study, a structural engineering report, etc. The Cooper memorandum was prepared after his review of the Application with its attachments and the gentleman's participation in the site walk. It is also clear Mr. Cooper had been provided and had reviewed minutes of the prior public hearings.[1] Among other opinions proffered, Cooper asserted SBA had not provided information regarding alternate sites and did not prove the need for a facility at the proposed height. The primary thrust of that memorandum, however, was that the documents submitted did not provided sufficient data to determine a need for this tower. Without such data as he specifically therein referenced, he opined it was "not possible to adequately evaluate the degree of existing coverage, the appropriateness of the search ring, the minimum tower height required, or the degree to which the proposed (or alternate) facilities meet this need." R. 22 at CT Page 8391 pp. 2-3.
At its regularly scheduled meeting of October 26, 1999, the Commission directed its Zoning Enforcement Officer to work with its attorney to draft a resolution of denial; at its November 23, 1999, meeting, the Commission chairman read a motion to deny the Application as prepared by its attorney. The motion stated the following reasons for the denial:
1) There is no evidence in the Record demonstrating that SBA Communications, Inc. is a personal wireless service provider nor is there any evidence in the Record to demonstrate that the applicant intends to become such a provider. Hence, the commission is unable to determine the need for the proposed wireless facility, the necessity that it be constructed at the particular location chosen by the applicant and/or whether a tower of the design and height requested is required. The needs of a provider must be presented to the commission so that the commission is able to determine compliance with the standards set forth in the zoning regulations.
2) No alternate sites were specifically identified or discussed in the application. No data, other than a general statement, was provided concerning the technical suitability of alternate sites.
3) The applicant did not submit to the commission the information needed to adequately evaluate the degree of existing coverage, the appropriateness of the "search ring" shown in Exhibit 4, the minimum tower height required, or the degree to which the proposed (or alternate) facilities meet this need. It is also not known if the gap in coverage alluded to by the applicant applies to only one carrier or to several. Different carriers may have different needs that would make the proposed tower inappropriate for their use.
4) No radio frequency power density calculations were presented to the commission so that the commission could determine compliance with the Federal Guidelines.
5) The requested tower height 195' above ground level cannot be justified by the data provided in the application. Without adequate consideration of alternate sites and without complete and fully annotated propagation plots, as discussed in the report of Flack Kurtz to the commission dated October 13, 1999, it is impossible to determine that the requested height is the minimum necessary to provide adequate service as required by the zoning regulations.
6) The construction and utilization of a 195' tower on a 6,400 sq.ft. parcel of land in the midst of a single-family residential district, in CT Page 8392 the opinion of the commission, is not in compliance with the standards set forth in Article III A. of the zoning regulations and in particular with the standards set forth in subsections 7.a., 7.b. and 7.c. thereof.
The Commission denied the Application and SBA was notified by letter dated December 3, 1999. This appeal was taken on December 15, 1999. SBA's claim is that the Commission's decision was unreasonable, arbitrary, and illegal because its reasons for denial were: (1) not supported by substantial evidence; (2) outside the Scope of the Regulations; and (3) based entirely upon a consultant's report prepared before all of the evidence was submitted.
The allegations of aggrievement in the appeal have been denied by the Commission and the burden rests squarely on the Plaintiff to prove that they are aggrieved parties entitled to appeal the decision of the Commission. I.R. Stich Associates, Inc. v. Town Council, 155 Conn. 1, 3
(1967). In Hughes v. Town Planning Zoning Commission, 156 Conn. 505
(1968) and numerous other cases, our courts have held that, in order to establish the necessary aggrievement, an appellant must prove he or she "had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that [he or she was] specifically and injuriously affected in their property or other rights." Id., at 507-08 (citations omitted). Such aggrievement is a jurisdictional prerequisite to maintaining the appeal. Bakelaar v. West Haven, 193 Conn. 59, 65
(1984). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Hall v. Planning Commission,181 Conn. 442, 445 (1980). In the instant case, the Sullivans have established their ownership of the property on which SBA proposed construction of this facility and their interest in the Option and Land Lease. Suppl. R 1. The denial of this Application injuriously affects the use and occupancy of their land and works financial detriment peculiar to them. They are each an aggrieved person" within the meaning of Conn. Gen. Stat. § 8-8(a)(1) and they therefore have standing to maintain this appeal. Likewise, SBA has been aggrieved as a result of their loss of income from carriers who would locate on the tower and it therefore has standing to appeal.
"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied." A.P.W. Holding v. Planning and Zoning Board,167 Conn. 182, 185 (1974). CT Page 8393
"In appeals from administrative zoning decisions. . . . the decisions will be invalidated even if they were reasonably supported by the record, if they were not supported by `substantial' evidence in that record." Kaufman v. Zoning Commission of City of Danbury, 232 Conn. 122,149 (Conn. 1995). "Substantial evidence, as construed by the courts, means more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Internal quotations omitted.) Bellsouth Mobility, Inc. v. GwinnettCounty, Georgia, 944 F. Sup. 923, 928 (N.D.Ga. 1996). "While substantial evidence is more than a scintilla, it is also less than a preponderance." (Emphasis added.) ATT Wireless PCS v. City Council of Virginia Beach,155 F.3d 423, 430 (1998).
The burden of proving the Commission acted arbitrarily, illegally, or in abuse of its discretion is on the plaintiff. McCrann v. Town Plan Zoning Commission, 161 Conn. 65, 74 (1971). In considering the scope and standard of review, a trial court is not at liberty to substitute its judgment for that of an administrative tribunal. Frito-Lay, Inc. v. PZC,206 Conn. 554, 572-73 (1988). The duty of the trial court, in zoning cases, is to review the record to determine whether the board has "acted fairly or with proper motives or upon valid reasons." A.P.W. HoldingCorporation v. Planning Zoning Board, 167 Conn. 182, 186-87 (1974). The task is simply to determine whether the record reasonably supports the conclusions reached by the agency. Stankiewicz v. ZBA, 15 Conn. App. 729
(1988); Burnham v. PZC, 189 Conn. 261, 265 (1983). Searching the record by the court applies whether no reasons were given by the agency or whether inadequate reasons were given. Stankiewicz, at 732. Where, as here, the board states reasons for the decision, the trial court can only review the record as to the reasons stated. Burnham, at 265; DeMaria v.Planning Zoning Commission, 159 Conn. 534, 541 (1970). It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the final collective decision. Id.; see also Central Bank for Savings v.Planning Zoning Commission, 13 Conn. App. 448 (1988).
Recently, our Supreme Court has articulated the standard of review with respect to a zoning commission or ZBA's exercise of discretion in acting on an application for a Special Exception. It reversed the decision of this state's appellate court, which found little or no discretion for a commission acting on a Special Permit regulation, in Irwin v. Planning Zoning Commission, 244 Conn. 619 (1998). It held:
 Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion CT Page 8394 to determine whether the proposal meets the standards set forth in the regulations. If; during the exercise of the discretion, the zoning commission decides that all standards enumerated in the special permit regulations are met, then. it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it." (Emphasis added). 244 Conn., at 628.
In Irwin, the zoning regulations referenced the preservation of certain natural resource features including streambelts and ridge lines. The record there supported a determination that potential detriments to the streambelt and land or ridge lines were sufficient to support a finding of noncompliance with the Special Exceptions regulations.244 Conn., at 633. Where an agency states multiple reasons for its decision, that decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. Quality Sand andGravel, Inc. v. Planning and Zoning Commission, 55 Conn. App. 533, 539
(1999); Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,539-40 (1987).
The fifth stated reason for the Commission's denial is the applicant's failure to demonstrate the proposed height of 195 feet was the minimum necessary to provide adequate service as required by the zoning regulations. Section 150-050(5) of Chapter 150 of the regulations requires "[d]ocumentation that the antenna height is the minimum required to function satisfactorily." Contrary to the appellant's frequent assertion the testimony of both Syed and Flynn confirmed the "need" for a tower of 195 feet, no citation to any part of the record establishes that need nor can any such evidence in the record be found. Syed, asserting Omnipoint's desire to be at the maximum height on the proposed tower, testified Omnipoint "would like to be at the very top because that will give us the most coverage and you know we are trying to get on the real top." Tr., R.40 at 115. He testified, "195 feet would be the most adoptable location for us." Id. Likewise, Flynn offered no evidence of the "need" — as opposed to the "desire" — for a tower of 195 feet. There was evidence from Syed that Omnipoint required greater height than "some companies" do because it operates at a higher frequency; Tr., R. 40 at 115-16. There was also testimony 140 feet was inadequate to provide the coverage Omnipoint desired. Tr., R. 40 at 115. To be sure, the testimony established the attractiveness to the applicant of a monopole 195 feet tall since a tower of 200 feet or more would require it to be lit and painted. Tr., R. 40 at 34. Similarly, it is clear the CT Page 8395 higher the tower the greater number of carriers it is possible to accommodate. Yet there was no testimony that Omnipoint could not locate at a height, for example, of 160 feet while also providing adequate service to the central New Milford area and in particular along Routes 202 and 109. In fact, when SBA filed its application, it had no signed agreement with any provider to locate on the tower. Tr., R. 40 at 109. Additionally, Flynn's testimony was that Omnipoint's propagation map indicated Omnipoint's need for an antenna at 185 feet. "A local government may reject an application for construction of a wireless service facility in an under-served area . . . if the service gap can be closed by less intensive means." Sprint Spectrum L.P. v. Willoth,176 F.3d 630, 643 (2nd. Cir. 1999). SBA's failure to demonstrate its compliance with the referenced zoning regulation[2] underscores the reasonableness of the Commission's denial.
The Commission's sixth reason for denying the Application was that the proposed tower would not be in character with the surrounding buildings or in harmony with the neighborhood. While the denial references `Article III A' and subsections 7.a, 7.b, and 7.c, those sections have been re-numbered. Tr., R. 40 at 146. The special Permit criteria are now found at § 180-040 of the regulations. § 180-040(1) states "the location, type, character and extent of the use of any building or other structure in connection therewith shall be in harmony with and conform to the appropriate and orderly development of the town and the neighborhood and shall not hinder or discourage the appropriate development and use of adjacent property or impair the value thereof." § 180-040(3) states the lot on which the use to be established "shall be of sufficient size and adequate dimension to permit conduct of the use and provision of buildings, other structures and facilities in such a manner that will not be detrimental to the neighborhood or adjacent property." Clearly, the sixth reason for the denial invokes Special Permit Criteria (1) and (3).
The appellant first posits the Commission's "abrupt" denial suggests the Commission would find that any wireless facility on any residential property (New Milford is almost entirely residentially zoned.) could not satisfy the Special Permit Criteria even though such facilities are permitted in residential zones and that such an interpretation would effectively preclude any monopole facility in the town. This generalization cuts too wide a path and ignores the concerns expressed both by commission members and numerous citizens — some of whom appeared faithfully at the hearings and others of whom wrote in opposition to the application. It also ignores that there is in the town an existing SNET monopole located approximately one (1) mile from the First Congregational Church, on which steeple Omnipoint has located antennas to provide wireless service in other parts of the community. Additionally, there are existing high tension power line towers on the CT Page 8396 very property in question and there are numerous other towers in town including a 150 foot cable television lattice tower and a 245 foot Northeast Utilities tower. The record therefore does not support a conclusion there are no circumstances under which the Commission would approve the construction of a 195 foot monopole. For the reasons stated above, neither SBA nor Omnipoint offered any evidence of its "need" for a tower of that height. It is not sufficient merely to state, as the applicant argues in its brief and in argument before this court, the height was appropriate to accommodate the needs of five (5) wireless carriers when, at the time of the Application, no carrier had committed to locating on the tower and when no carrier other than Omnipoint had committed to do so before the hearing closed — thus precluding evidence of any wireless provider's "need" for a 195 foot tower.
The appellant next argues the facility is in harmony with the neighborhood and the property in question because there are existing high tension power line structures on or near the property and because the facility will be surrounded by abundant mature trees. The existing structures, however, are no more than 100 feet tall and this tower would be nearly twice as tall. The trees — even assuming they are not denuded by harsh winter weather as is frequently endured in this northwest corner of the state — are not at full maturity taller than 70 feet. Tr., R. 40 at 7. Much emphasis was placed (both in the brief and at oral argument) on the assertion this facility would not adversely impact the value of nearby properties — a concern expressed by the residents. The applicant submitted two property value studies which concluded similar telecommunication facilities — to include monopoles — would not impact property values. While such evidence might have justified these commission members voting to approve the application, it is surely not unreasonable to question the relevance or validity of the authors' conclusions since they addressed different areas of this state and since one study conceded wireless technology was new and there were not then a sufficient number of cellular telephone towers old enough to find land and home sales to produce at effect. R. 21 at 2. Since the regulation of these wireless services is vested in local authorities, it is unreasonable to conclude such evaluations as were presented this Commission should dictate this zoning board's granting of the Application when, as here, the studies are suspect and there was strong opposition by the residents. The oral representations voiced at the hearings and the signatures and/or letters from citizens constituted more than a scintilla of evidence to persuade reasonable minds to deny the Application.
It is not, as appellant implies, incumbent upon the Commission to refute the findings of these studies or of any "expert" witness (as Syed may be considered) since the Commission may deny an application because CT Page 8397 it does not believe expert testimony. "Although only the plaintiff offered expert testimony, an administrative agency is not required to believe any witness, even an expert. . . ." Kaeser v. ConservationCommission, 20 Conn. App. 309, 316 (1989). A commission is "entitled to take into account its own knowledge of the local conditions. . . . CameoPark Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672, 679
(1963). This Commission made a site inspection, a fact our Supreme Court considered of some importance in Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525 (1987). "Knowledge obtained through personal observations of the locus may properly be considered by an agency in arriving at reasons given for its denial." Id. at 547.
Safety concerns were raised. One resident expressed the worry that locating antennas along the busy Route 202 and Route 7 would mean increased phone use while driving. Tr., R. 40 at 130. During deliberations, an agency member worried the fall zone of the tower would include property other than that of the Sullivans.[3] There were no objections to the tower on the basis of its unsightliness and its effect on the town's ongoing beautification process. Tr., R. 40 at 38, 130.
A Special Permit Application may be denied on the basis of the general considerations (Special Permit Criteria) alone. See Cameo Park Homes,Inc. v. Planning Zoning Commission, 150 Conn. 672 (1963). The appellant's criticism of the Commission's sixth stated reason for denial on the basis it is grounded on such considerations fails to recognize it is a stated intent and purpose of this town's zoning regulations "to protect and conserve the existing or planned character of all parts of the town and thereby aid in maintaining their stability and value, and to encourage the orderly development of all parts of the town." Chapter 10, § 010-010(5); R. 38.
The appellant's position the denial is not founded upon the evidence before the Commission but is instead an expression of that body's "transparent intent to deny the Application regardless of the evidence" (appellant's brief; at 32) is rejected. The record contains substantial evidence to support the Commission's stated reasons for denying this special permit and there is nothing within the record to support a finding the Commission acted arbitrarily, unreasonably, or legally.
The appeal is dismissed.
SHEEDY, J.